UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSE
CHATTANOOGA DIVISION

| | |
|---|---|
| SKF USA INC., ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. 1:09-CV-299 |
| ) | |
| v. ) | |
| ) | |
| CRESWELL RICHARDSON, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**RESPONSE TO PLAINTIFF'S OBJECTION TO PROTECTIVE ORDER**

Pursuant to E.D. Tenn. L.R. 7.1, Defendant Creswell Industrial Supply, Inc. d/b/a Creswell Richardson ("Creswell" or "Defendant") hereby submits this brief in response to Plaintiff SKF USA Inc.'s Objection to the Protective Order that Magistrate Judge William B. Mitchell Carter ("Magistrate Judge Carter") entered on September 14, 2010.

1. <u>Brief Case Background</u>

The present dispute arose after Defendant sought to dispose of certain industrial bearings as scrap metal. In 2008, Defendant, a local industrial bearing retailer, bought certain SKF brand bearings from a company in California called F & G Trading. Defendant in turn sold some of these SKF bearings to a company called Bearings Limited, another retailer of industrial bearings. Bearings Limited thereafter returned a portion of these bearings to Creswell, indicating that they were unsure of the bearings' authenticity, and requested that Creswell return some of the money it paid for these bearings.[1]

---

[1] Plaintiff in its Objection to the Protective Order ("Plaintiff's Objection" or "Objection") stated, seemingly as an uncontested fact, that Defendants' principals, Rob and Greg Creswell, "were notified by one of Defendant's salesmen, Dwayne Henry, that the bearings were . . . [counterfeit] SKF bearings" prior to the time Defendant sold the bearings in question to Bearings Limited. (Pl.'s Obj. at 2.) This Court is not permitted to review additional evidence in its consideration of Plaintiff's Objection, and thus Defendant is not allowed to provide competing

1

After Creswell returned money to Bearings Limited, it sought to keep the bearings in question off the market so as to ensure that it did not sell any products the authenticity of which may have been an issue. To do this, Defendant immediately segregated the bearings returned by Bearings Limited from the rest of its regular inventory. Then Defendant disposed of a large portion of these bearings by selling them as scrap metal to James Fortner ("Mr. Fortner"), an individual to whom Defendant sold scrap metal and industrial waste materials, for $ 0.05 per pound. These bearings weighed a little over 8,000 pounds, so Mr. Fortner paid Defendant a total of $411.00 for the bearings as scrap metal. Defendant further segregated that portion of the bearings that it did not sell as scrap to Mr. Fortner, placing them in storage in Defendant's old warehouse facility. Those bearings remained in storage there until after Plaintiff initiated the present suit, when Plaintiff SKF USA Inc. ("Plaintiff" or "SKF") requested that they be moved. Because of Defendant's decision not to sell the bearings for profit on the bearing market, Defendant incurred a loss of approximately $90,000.

As it turns out, Mr. Fortner apparently placed some of these scrap bearings in the stream of commerce as actual, retail bearings, instead of melting them down as scrap: according to Plaintiff's allegations, some amount of the bearings Defendant sold as scrap to Mr. Fortner ended up in Vancouver, Washington. Plaintiff allegedly examined these bearings in Vancouver and determined that some were counterfeit. After allegedly tracing some of the bearings in Vancouver back to Defendant, Plaintiff accused Defendant of intentionally, wantonly, willfully,

---

affidavits in contradiction to Mr. Henry's. *Tyson v. Equity Title & Escrow Co. of Memphis*, Civ. No. 00-2559 D/A, 2003 U.S. Dist. LEXIS 16677 at *4-5 (W.D. Tenn. Aug. 21, 2003) (noting that "[w]hen reviewing a magistrate judge's ruling made pursuant to 28 U.S.C. § 636(b)(1)(A), 'the district court is not permitted to receive further evidence . . . .'"). However, the Court should note that Defendant in its Answer (Court Doc. # 19) unequivocally denied Plaintiff's allegations of any intentional or knowing misconduct under the Lanham Act, and continues to do so through its discovery efforts. (Def.'s Ans. at ¶¶ 69, 70, 80, 85.)

and/or maliciously participating in a "sophisticated program for the production, distribution, and sale of a large volume of counterfeit SKF bearings."

2. The Protective Order

As indicated by Plaintiff in its Objection, both Plaintiff and Defendant agree that a Protective Order is necessary in this case to protect certain proprietary information the parties will inevitably disclose during the normal course of discovery. The parties negotiated the contents of such proposed order since, at the latest, April 2010, yet were unable to reach an agreement upon the appropriate scope of said order. On May 5, 2010, Plaintiff filed a Motion for the entry of a Protective Order (Court Doc. No. 37). Prior to that date, the version of the proposed confidentiality agreement that the parties negotiated contemplated two degrees of confidentiality—one related to "Confidential" information, and another related to "Highly Confidential" information. In the protective order Plaintiff proposed for entry, however, Plaintiff eliminated the "Highly Confidentiality" category in favor of a single category of "Confidential" information. Plaintiff would thus have allowed the following categories of people access to all "Confidential" information:

> (a) directors, officers, employees and in-house counsel of the Parties in this case; (b) the Parties' counsel of record, including their paralegals, secretaries and other legal support staff; (c) outside experts and outside consultants retained by the Parties or their counsel in this action; (d) the Court, court personnel and court and deposition reporters; (e) court personnel and court authorities for any subsequent claims against third parties identified in the confidential information; and (f) such other persons as disclosed and agreed to in advance, in writing, by the Parties, or in the case of Confidential Information of any Third Party, the Third Party disclosing such Confidential Information.

(Pl.'s Mot. for Protective Order at Ex. A, ¶ 9.) Defendant questioned, among other things, Plaintiff's elimination of the "Highly Confidential" category, and duly filed a response in opposition to Plaintiff's proposed Protective Order. (Court Doc. Nos. 42, 43.)

Magistrate Judge Carter held a hearing on Plaintiff's Motion for Protective Order on May 21, 2010. At the conclusion of the parties' oral arguments, Magistrate Judge did not rule on the merits of Plaintiff's Motion in hopes that the parties would be able to work out their differences regarding the appropriate scope of the Protective Order.

Over the course of the following months, the parties continued to attempt to engage in discovery without having the benefit of a Protective Order. Most notably, Defendant on June 14, 2010 moved Magistrate Judge Carter to permit Defendant to engage in additional written discovery beyond the amount allowed under the Federal Rules of Civil Procedure. Among the topics Defendant wished to investigate was Plaintiff's pricing of SKF bearings in the marketplace, and specifically the prices at which Plaintiff sells bearings to Original Equipment Manufacturers ("OEMs"). This area of inquiry was necessitated by Plaintiff in its allegations that Defendant's "knowledge" and "intent" was evident in part based upon the prices Defendant paid for the purported SKF bearings at issue. Plaintiff objected to Defendant's ability to seek out this information, but Magistrate Judge Carter during oral argument ruled that such evidence was relevant to Creswell's defense and therefore discoverable. Magistrate Judge Carter granted Defendant's motion to increase the amount of written discovery, and Defendant duly asked Plaintiff to provide, among other things, certain pricing information.

After Defendant served Plaintiff with a second set of written discovery, Plaintiff submitted a new draft of a proposed Protective Order to Defendant. This new proposed Protective Order was similar in many respects to those the parties considered previously, but one item in Plaintiff's proposed Protective Order that caused Defendant particular concern was a new "Highly Confidential – Attorneys' Eyes Only" category of information. On July 22, 2010, counsel for both parties met to discuss their positions related to the contents of the potential

4

Protective Order. During this discussion, it became evident that the parties substantially agreed upon the contents of Plaintiff's proposed Protective Order with two exceptions, only one of which is presently relevant: the individuals that would be entitled to view documents designated as "Highly Confidential – Attorneys' Eyes Only."

Plaintiff proposed that the individuals who would be entitled to view documents designated as "Highly Confidential – Attorneys' Eyes Only" should include only the following people:

> (a) in-house counsel of the Parties in this case; (b) the Parties' counsel of record, including their paralegals, secretaries and other legal support staff; (c) outside experts and outside consultants retained by the Parties or their counsel in this action; (d) the Court, court personnel and court and deposition reporters; and (e) such other persons as disclosed and agreed to in advance, in writing, by the Parties, or in the case of Confidential Information of any Third Party, the Third Party disclosing such Confidential Information.

Defendant, which is a small family-run business that does not have in-house counsel or, as of the present date, retained experts, responded that if Plaintiff's in-house counsel was entitled to review such information, Defendant's President, Rob Creswell, should be provided similar access, given the size of and resources available to Creswell Richardson.

Defendant on August 2, 2010 filed a Motion for the entry of a Protective Order (Court Doc. No. 55) in which it requested, among other things, that the Court allow Rob Creswell to view "Highly Confidential – Attorneys' Eyes Only" information. On August 27, 2010, Judge Carter heard the parties' oral arguments on the motion, and ruled in favor of Defendant. Magistrate Judge Carter entered Protective Order on September 14, 2010, and included in it a provision allowing Rob Creswell to view "Highly Confidential – Attorneys' Eyes Only." Plaintiff on September 24, 2010 filed its Objection. In the meantime, Plaintiff has provided over

5

1200 documents responsive to Defendant's written discovery requests, and Plaintiff has designated all of these documents "Highly Confidential – Attorneys' Eyes Only."

3.  Discussion

"A district court has wide discretion in weighing any relevant factors and deciding whether to grant a motion for a protective order." *Key Components, Inc. v. Edge Elecs., Inc.*, No. 3:07-CV-224, 2008 U.S. Dist. LEXIS 93025 (E.D. Tenn. Nov. 17, 2008) (quoting *Caldon, Inc. v. Advanced Measurement & Analysis Group, Inc.,* No. CA 04-1951, 2007 U.S. Dist. LEXIS 94506 (W.D. Penn. Dec. 27, 2007)). Likewise, a district court may overrule a Magistrate Judge's non-dispositive ruling only when the Court finds the Magistrate's ruling "clearly erroneous and contrary to law." 28 U.S.C. 636(b)(1)(A).

Under Fed. R. Civ. P. 26(c), trial courts have the ability to fashion, in general and specific terms, appropriate protective orders. For instance, trial courts are not only free to determine the "terms, including time and place, for . . . discovery" as well as "prescribe[e] a discovery method other than the one selected by the party seeking discovery," but are also permitted to restrict "the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(B)–(c)(1)(D). Of particular relevance to the present case is the fact that courts are permitted to "requir[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . . ." *Id.* at 26(c)(1)(G). Courts are required to utilize their broad discretion under Rule 26 carefully, such that they "'must balance the risk to [one party] of inadvertent disclosure of trade secrets to competitors against the risk to [the other party] that protection of . . . these trade secrets' will impair the parties' ability to proceed effectively with the lawsuit." *Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373-GV,

2002 U.S. Dist. LEXIS 27981 (W.D. Tenn. Jan. 29, 2002) (quoting *Brown Bag Software, Inc. v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).

"Attorneys' eyes only" provisions in protective orders may be appropriate where relevant information is "especially sensitive" or may be divulged to an entity in direct business competition with the disclosing party.[2] *See Key Components, Inc.*, 2008 U.S. Dist. LEXIS 93025 at *6-13; *Westbrook v. Charlie Sciara & Son Produce Co.*, 70 Fed. R. Serv. 3d (W.D. Tenn. 2008); *Medtronic*, 2002 U.S. Dist. LEXIS 27981 at *12-18. However, in cases where a party is "uniquely qualified" to review certain evidence or is the "most knowledgeable person about the issues in the case," courts will permit such party to review the evidence at issue in order to assist said party's attorneys. *Medtronic*, 2002 U.S. Dist. LEXIS 227981 at *12-18 (permitting the president of a corporate party access to "attorneys' eyes only" information where the president was "uniquely qualified" to assist his attorneys with the review of certain evidence). Significantly, courts determining whether a party should gain access to "attorneys' eyes only" information have also noted as relevant instances when such party is an officer of "a small company . . . lack[ing] sufficient in-house resources to defend [itself without the officer's] full assistance." *Id.* at *13.

In its Objection, Plaintiff lists two categories of information it deems sensitive enough to warrant "Highly Confidential – Attorneys' Eyes Only" protection: (1) information regarding Plaintiff's pricing; and (2) information regarding Plaintiff's anit-counterfeiting measures. Defendant does not contest that this is sensitive and/or proprietary business information; indeed, most of the information the parties have exchanged thus far has been of a similar nature and this

---

[2] The Court should note that while Defendant, as a bearing retailer, is in direct competition with those bearing distributors that share a formal business relationship with SKF (i.e. "Authorized" SKF distributors), Defendant does not manufacture bearings or bearing packaging, nor does it use, distribute or manufacture any anti-counterfeiting devices akin to that at issue in this case.

7

is precisely the type of information that the Protective Order is designed to protect. Rather, Defendant contends that Magistrate Judge Carter acted well within his broad grant of discretion to allow Rob Creswell access to such information under the same guidelines that would permit a third-party expert to do the same.

While Plaintiff's retained counsel would benefit from the knowledge Plaintiff's in-house counsel possesses about the industrial bearing industry in their review of "Highly Confidential – Attorneys' Eyes Only" information, Defendant, who does not employ in-house counsel, would not be permitted to similarly assist its retained counsel in their review of such information. This dichotomy would place Defendant's counsel, and thus Defendant, at a substantial strategic disadvantage, and would force Defendant to retain an outside expert at great expense for the sole purpose of reviewing and advising Defendant's retained counsel regarding "Highly Confidential – Attorneys' Eyes Only" information. Like the party at issue in *Medtronic*, Rob Creswell is the President of a "small company . . . lack[ing] sufficient in-house resources to defend [itself without his] full assistance." *Id.* Likewise, Magistrate Judge Carter's decision to permit Rob Creswell to assist his attorneys in reviewing this evidence was not clearly erroneous.

Plaintiff contends that Rob Creswell should not be allowed to assist his attorneys in reviewing any information Plaintiff demarcates as "Highly Confidential – Attorneys' Eyes Only" because he "could leak the information to others within the bearing industry." (Pl.'s Obj. at 6.) Plaintiff, however, has not cited any undisputed evidence to bolster the validity of its concern or state how Rob Creswell's propensity for disobeying the Magistrate Judge's Order was any greater than any third party expert or consultant also permitted access to "Highly Confidential – Attorneys' Eyes Only" information.[3] That Plaintiff characterizes Defendant's actions—whereby

---

[3] Though Plaintiff would have this Court believe that Rob Creswell "knowingly purchased and sold counterfeit SKF bearings" as a matter of fact, Defendant again notes that this contention contradicted by Defendant's Answer,

8

Defendant willingly incurred more than a $140,000 loss by removing from the marketplace bearings about which one of Defendant's customers expressed concerns, and subsequently selling the bearings in question to a scrap metal dealer for around $400 so that they could melted down—as those of one with "little concern for the risks associated with buying and selling counterfeit SKF bearings or for SKF's desire to ensure the distribution of only legitimate SKF products," is simply Plaintiff's position and is not a "fact" this Court should consider as weighing against Defendant's interest in having Rob Creswell view "attorneys' eyes only" information.

Further, the Court should note the additional restrictions Magistrate Judge Carter placed upon Rob Creswell's access to "attorneys' eyes only" information above and beyond those applicable to others permitted to view such information. Rob Creswell's access is premised upon the following conditions:

> [Rob Creswell] (i) shall only review "Highly Confidential – Attorneys' Eyes Only" materials at the offices of Defendant's outside counsel; (ii) shall not possess or retain any copy or reproduction of such information in any form; (iii) shall be required to fully review this order; and (iv) shall be subject to being held in contempt or other sanctions if he violates this Order . . . .

(Protective Order [Court Doc. No. 65] at ¶ 11.) No other individual, third-party or otherwise, is subject to such strict parameters with respect to the Protective Order.

4. Conclusion

As a lifelong participant in the bearing distribution business, Rob Creswell is in a unique position to interpret information Plaintiff provides to Defendant's counsel and provide assistance in the defense of the claims against his company. For those and the foregoing reasons, Magistrate Judge Carter's decision to add Rob Creswell to the list of individuals who may

---

Defendant's continuous discovery efforts and its representations throughout the course of this litigation. (Pl.'s Obj. at 4.)

review "Highly Confidential – Attorneys' Eyes Only" information is not clearly erroneous and should be upheld by this Court.

Respectfully submitted,

PATRICK, BEARD, SCHULMAN & JACOWAY, P.C.

By: /s/Gary R. Patrick
    Gary R. Patrick, TN BPR # 001941
    McKinley S. Lundy, Jr., TN BPR # 027391
    Attorneys for Defendant
    537 Market Street, Suite 202
    Chattanooga, Tennessee 37402
    Telephone: (423) 756-7117
    Facsimile: (423) 267-5032
    gpatrick@pbsjlaw.com

## **CERTIFICATE OF SERVICE**

I certify that on September 30, 2010, a copy of the foregoing motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

PATRICK, BEARD, SCHULMAN & JACOWAY, P.C.

By: /s/Gary R. Patrick